D. C. HALL et al. v. STATE ex rel. ALONZO NORMAN.

Eastern Section. March 29, 1929.

Petition for Certiorari denied by Supreme Court, October 12, 1929.

Lawrence W. Parker, of Knoxville, for D. C. Hall.

L. C. Carlock and H. T. Poore, both of Knoxville, for Alonzo Norman.

Hugh M. Tate and Henry Hudson, both of Knoxville, for Walter 'C. Anderson and American Surety Co.

SENTER, J. This suit grew out of the shooting of Alonzo Norman by D. C. Hall, a deputy sheriff of Knox county. The suit was brought against Walter C. Anderson, sheriff of Knox county, and his bondsmen, American Surety Co. of New York, and D. C. Hall, a deputy sheriff, and his two sureties on his official bond. Process was not served on the bondsmen of Hall.

It appears that on October 18, 1925, the plaintiff below, Alonzo Norman, with several. other men, was engaged in a game of craps near Powell Station in Knox county. A number of deputy sheriffs had gone from Knoxville on a raiding expedition looking for illicit whiskey distilleries, and while they were engaged in this search these officers came upon the group engaged in a dice or craps game. When the officers got within forty or-fifty yards of where the group was engaged in shooting craps, their presence was discovered and the group jumped up and ran in various directions. The plaintiff, Alonzo Norman, ran and was pursued by D. C. Hall, a deputy sheriff. It appears that several shots were fired, and the plaintiff, Norman, was shot in the leg by someone. The declaration alleged that he was shot by D. C. Hall, a deputy sheriff of Knox county appointed by defendant, Walter C. Anderson, the sheriff of Knox county. The officers did not have warrants for the arrest of any of these men engaged in the game. The place where the crap game was going on was in a depression in an old field grown up with bushes and small old field pine and other growth. There were several men engaged in the game, and were in a circle closely grouped. When the presence of the officers was discovered the entire group scattered and the officers gave pursuit. Walter C. Anderson, the sheriff of Knox county, was not present. These officers had not gone in search of those engaged in the crap game. They had been directed by the sheriff to seek illicit distillers supposed to have been engaged in making whiskey in that community, and accidentally ran up on this group engaged in the crap game.

At the conclusion of all the evidence all of the defendants moved for a directed verdict, which motion was overruled, and at the conclusion of all the evidence, each of the defendants again moved for a directed verdict in their favor. These motions were likewise overruled, and the trial resulted in a jury verdict in favor of the

plaintiff, Alonzo Norman, and against the defendant, D. C. Hall, Walter C. Anderson, and the American Surety Company for the sum of $2000, and judgment rendered on the verdict by the trial judge. Subsequently, each of the defendants filed their respective motions for a new trial. Upon the hearing of the motions the trial judge overruled the motion of the defendant, D. C. Hall, but granted the motions of the defendants, Walter C. Anderson, and the American Surety Company, and at the same time directed a verdict in favor of the last-mentioned defendants.

The defendant, D. C. Hall, has appealed from the action of the court in overruling his motion for a new trial and rendering judgment against him. A motion for a new trial was made by plaintiff on the action of the court in granting the motion of the defendants, W. C. Anderson, and the American Surety Company, and in dismissing the suit, as to those two defendants, which motion for a new trial was overruled, and from which action of the court the plaintiff, Alonzo Norman, has appealed and has assigned errors.

We will first dispose of the assignments of error of D. C. Hall. The first assignment by appellant, D. C. Hall, assigns as error the action of the court in refusing to award to appellant a new trial on the ground that the evidence preponderated against the verdict of the jury. This assignment, under the rules of this court, cannot be considered. The second assignment is on the grounds that there is no evidence to support the verdict of the jury. The third is on the grounds that the verdict is excessive, and shows passion, prejudice and caprice on the part of the jury.

The second assignment of error must be overruled, because there is evidence to support the verdict of the jury. The plaintiff testified that Hall shot him in the leg with a pistol while he was pursuing plaintiff. Plaintiff testified that immediately before the shot was fired by Hall he turned his head and saw Hall with the large blue steel barrel pistol, which Hall was holding in both hands and in this position Hall fired the pistol at him, the bullet striking him in the leg. Hall admits firing a pistol, but denies that he shot the pistol at the plaintiff. He states that other pistol shots were fired, and fearing that someone of the officers might shoot him, the underbrush and growth being dense, that they might accidentally or by mistake shoot him, and to warn them as to his location he fired the pistol straight up in the air, firing only one shot. The bullet extracted from plaintiff's leg was of .38 caliber, and Hall claims to have had a .32 Smith & Wesson pistol that he fired, and that he did not have a .38 caliber pistol. There was evidence in the record to corroborate Hall's statement, but the plaintiff testified positively that the small .32 caliber pistol which Hall introduced at the trial was not the pistol which Hall fired at him. He testified that the pistol which Hall fired at him was a five or six inch barrel blue steel pistol,

This was some evidence, and the jury believed the statement. Other circumstances appear in the record which corroborate the contention of the plaintiff that Hall fired a .38 caliber pistol at him. There being some evidence to support the verdict of the jury, and the trial judge, by denying the motion of Hall for a new trial, concurred in the jury verdict as to Hall, this assignment of error cannot be sustained, and is accordingly overruled.

Under the assignment that the verdict was excessive, so as to indicate passion, prejudice and caprice, it is contended for appellant, Hall, that plaintiff's injuries were slight, and under the rule of compensatory damages, the verdict and judgment is excessive. The record discloses that as a result of the pistol shot wound, plaintiff was confined in the City Hospital for some weeks, and that the wound became infected, and he was removed to another hospital, and was not able to return to his work for several months. He was shown to have an earning capacity of from $3 to $5 per day. At the time he received the injury, he was in good health and 35 years of age. We do not think the verdict was excessive.

It results that the assignments of error of appellant, D. C. Hall, are overruled, and the judgment affirmed as to him.

The five assignments of error filed by plaintiff below, Alonzo Norman, present but two questions. First, that under the evidence it was error for the court to direct a verdict in favor of the two defendants, Anderson and the American Surety Co., it being the contention of appellant, Norman, that there was evidence in the record to show that the game of craps in progress at the time these officers approached the group, was an offense being committed in the presence of the officers, and that Hall, being a deputy sheriff, at the time of the shooting, was acting in his official capacity. It being further contended under this assignment, that if Hall did not actually see any money present and did not actually see the group engaged in shooting craps, that Hall, from all the facts and circumstances knew that the group was so engaged and that gambling was being indulged in; that according to Hall's admissions, he saw this group of men in a circle kneeling down on the ground and heard the snapping of their fingers, and that this amounted to knowledge upon the part of Hall that they were then shooting craps and gambling, and it was therefore an offense being committed in his presence.

Hall, in his examination in chief and his cross-examination, when first on the stand, did state that the group was shooting craps as he and the other officers approached, and that they jumped up and ran and scattered. He was recalled to the stand, and then stated that he did not see any money present with the group, and did not see or hear any betting, but did hear the snapping of the fingers, and that he suspicioned that a game of craps was going on. The

other officers present testified, and neither of them saw any money or any gambling, but they each testified that when the officers approached within forty or fifty yards of the group, their presence was discovered and the group jumped up and scattered, running in different directions. They all stated that they suspicioned that there was a game of craps going on among the group. This was but surmise. The suspicion that there was a game of craps was based on the fact that there were several men sitting or on their knees, grouped in a circle. Hall stated that he heard the snapping of fingers. There is no evidence in the record that the snapping of fingers usually occurs in a game of craps, and in the absence of proof that the snapping of fingers accompanied a game of craps, and is one of the incidents of a game of craps, would not warrant the court and jury to attach any significance to that incident. There was no evidence by any witness that Hall or the other officers saw any gambling, and they all state that they were not near enough to the group to see whether there was any money used or any gambling or not. They all stated that when their presence near the scene was discovered those composing the group supposed to be engaged in shooting craps, jumped up and ran. There is no evidence that any dice were left on the ground, or any money left on the ground, or any other indications of gambling, other than that these several men were either sitting or kneeling on the ground in a circle, and the statement by Hall that he heard the snapping of fingers. We do not think that these circumstances constituted an offense against the law being committed in the presence of the officer, Hall, so as to authorize him to make an arrest without a warrant. The assignment of error on this ground is overruled and disallowed.

The other question presented by certain of the assignments of error challenges the action of the trial judge in directing a verdict in favor of the defendants, Anderson and the Surety Company, after the jury had been dismissed. It is contended under these assignments of error by appellant, Norman, that the trial judge could not direct a verdict and pronounce a judgment after the dismissal of the jury, and that he could only have granted the motion for a new trial, and let the issues be submitted to a jury, and that the action of the court, and the procedure is unknown to the forms of law and to the practice in this state, and is without authority of law. This contention proceeds upon the theory that the motion for a directed verdict by these two defendants had been overruled and disallowed, and that the jury had returned a verdict in favor of plaintiff and against these two defendants, and that judgment was rendered by the court on the verdict, and that the motion for a new trial by these defendants, when granted, would only entitle

them to a new trial by a jury, and that the trial judge would only be warranted in granting a new trial, the issues to be determined by a jury.

In this case it appears that in the respective motions for a new trial made by the respective defendants, Walter C. Anderson and the American Surety Company, there were several grounds set out, substantially the same in both motions, and the court sustained the motion for a new trial by the respective defendants on the third, fourth, and fifth grounds. The third ground in the respective motions alleged error in overruling and in not sustaining their respective motions for a directed verdict at the conclusion of all the evidence. The fourth ground alleged that there was no evidence to sustain the verdict of the jury as against these two defendants, and the fifth that the evidence preponderates against the verdict of the jury. In sustaining these three grounds of the motion for a new trial, the learned trial judge held that he was in error in denying the respective motions of these two defendants for a directed verdict.

The question made by these assignments of error was considered by the court in the case of Bostick v. Thomas, 137 Tenn., 99, and in the opinion in that case it is said:

> "If the trial judge upon the consideration of the motion for a new trial deems that he erroneously denied a motion for a directed verdict, it is his duty in considering the motion for a new trial, to correct such error and direct a verdict."

In Barnes v. Noel, 131 Tenn., 126, in the third headnote, it is said:

> "A motion for a new trial is not alone to secure another hearing, but to present errors complained of for correction, if possible. Hence, if the trial court erred in directing a verdict, he should set it aside, or, if he erred in refusing to direct a verdict, he should on a motion for a new trial, make the appropriate direction."

The case of King v. Cox, 126 Tenn., 563, and of Sprankle v. Meyernick, 4 Tenn. Civil App., 515, cited and relied upon by appellant, both discuss the distinction between a demurrer to evidence and a motion for a directed verdict. It is true, it is said in those cases, referring to the distinction, that a demurrer to evidence withdraws the question absolutely from the jury, while in the motion for a directed verdict the jury must render a verdict, although by direction of the court. We have also noted the comment in the brief of appellant on the Barnes case and the Bostick case, and the contention made that these cases, when considered in the light of the holding in Hamburger v. Ill. Central R. R. Co., 138 Tenn., 131, does not approve the procedure and practice by the trial judge in the present case on the matter of directing a verdict and

entering judgment without impaneling a jury. We do not so understand the holding in the Bostick v. Thomas case. As we construe the holding in that case, and also in the Barnes v. Noel case, the court approved the practice of correcting the error committed by the disallowance of the motion for a directed verdict made at the conclusion of the evidence, by doing then what it should have done at the time the motion for a directed verdict was made. It is but a meaningless form for the Circuit Judge to order a new trial and submit the issues to a jury when it is known in advance that a directed verdict must result. We are also of the opinion that the Supreme Court, in the two cases referred to, held that it is the duty of the trial judge on a motion for a new trial, when he decides that he was in error in denying the motion for a directed verdict, to correct the error by directing a verdict and entering the judgment which he should have done when the motion for a directed verdict was made at the conclusion of the evidence.

It results that all assignments of error are overruled, and the judgment of the lower court is affirmed. The cost of the appeal will be divided and paid by the respective appellants and sureties on their respective appeal bonds.

Owen and Heiskell, J.J., concur.